UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SKIDMORE,

       Plaintiff,

v.                                                    Case No. 14-13031
                                                      Honorable Linda V. Parker

ACCESS GROUP, INC., KENTUCKY
HIGHER EDUCATION STUDENT LOAN
CORP., EXPERIAN, and MRS BPO, LLC,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT KHESLC'S MOTION TO DISMISS AND DENYING AS MOOT ITS MOTION TO STAY DISCOVERY PENDING RESOLUTION OF THE MOTION TO DISMISS

In this action, filed August 4, 2014, Plaintiff Daniel Skidmore ("Plaintiff")

claims that Defendants violated state and federal law by failing to properly process

payments made toward his student loans and then by reporting the loans as unpaid

to credit reporting agencies. Specifically with respect to Defendant Kentucky

Higher Education Student Loan Corporation ("KHESLC"), Plaintiff alleges one

count of negligence in an eight-count First Amended Complaint filed March 11,

2015.[1] Presently before the Court is KHESLC's motion to dismiss and motion to

---

[1] Count 7 of Plaintiff's First Amended Complaint is titled "injunction" against
KHESLC. Injunctive relief is a remedy, however, not an independent cause of
action. *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013)
(Cont'd . . .)

stay discovery pending resolution of its motion to dismiss.  The motions have been fully briefed.

KHESLC seeks dismissal of Plaintiff's claim against it, arguing first that as an arm of the State of Kentucky, it is entitled to sovereign immunity under the Eleventh Amendment to the U.S. Constitution.  KHESLC also argues that it is entitled to governmental immunity under Kentucky law.  Plaintiff argues that KHESLC's motion is procedurally improper because sovereign immunity is an affirmative defense that cannot be addressed without discovery.  If the motion is addressed, Plaintiff contends that the Kentucky legislature waived KHESLC's sovereign immunity by creating the entity as an "independent de jure municipal corporation and political subdivision" and by granting it the power "[t]o sue and be sued."  *See* Ky. Rev. Stat. Ann. §§ 164A.030, .060.  Alternatively, Plaintiff argues that the relevant factors for determining whether an entity is an arm of the state weigh in favor of finding that KHESLC in fact is not an arm of Kentucky entitled to sovereign immunity.  Plaintiff contends that Michigan law rather than Kentucky

---

(concluding that the district court correctly found that the plaintiff's request for injunctive relief was a request for a remedy and not a separate cause of action); *Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action"); *see also Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 701 (Mich. 2005) ("It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy.") (internal quotation marks and citation omitted).

law governs this dispute and that Michigan's governmental immunity statute does not shield KHESLC from liability.

A claim of sovereign immunity challenges the court's subject matter jurisdiction and, as such, is properly raised under Federal Rule of Civil Procedure 12(b)(1). *See, e.g., O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). Rule 12 expressly provides that a motion under Rule 12(b)(1) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). As such, there is no merit to Plaintiff's contention that KHESLC's motion to dismiss is procedurally improper.

A Rule 12(b)(1) motion to dismiss an action for lack of subject matter jurisdiction may be premised on a facial attack or a factual attack. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). As the Sixth Circuit described these two categories of motions:

> A *facial* attack is a challenge to the sufficiency of the pleading itself. On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party . . . A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id*. (internal citations omitted) (emphasis in original). As matters outside the complaint may be considered in deciding a Rule 12(b)(1) motion raising a factual

3

attack-- which KHESLC's motion does-- there may be merit to Plaintiff's argument that he needs discovery to properly respond to the motion.

The party opposing dismissal and requesting discovery has the burden of demonstrating the need for it. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (citing *Freeman v. United States*, 556 F.3d 326, 341-42 (5th Cir. 2009)). The party is " 'not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.' " *Id*. (citing *Freeman*, 556 F.3d at 342). "Moreover, the burden is greater where . . . 'the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery.' " *Id*.

In an amended declaration submitted in response to KHESLC's motion to dismiss, Plaintiff states that he needs to conduct discovery on "several critical issues" which include:

> under authority KHESLC claims to engage in servicing non-Kentucky loans, why KHESLC itself classifies its activities as proprietary if it does not view them as such; why K[H]ESLC activities are not classified as 'governmental' in KHESLC's view, what percentage of revenues and profits came from servicing non-Kentucky loans, different types of student lending, support to other Kentucky entities, collections activities, and other activities . . ...

4

(ECF No. 39 ¶ 11.)  Plaintiff further indicates that he seeks through discovery to "identify documents, insurance contracts, admissions, information about operational activities and the value of those activities . . .." (*Id*. ¶ 12.)  Much of this information, however, is not relevant to the four-factor analysis used to determine whether KHESLC is entitled to sovereign immunity.[2]  *See Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004) (holding that the district court did not err when ruling on the defendant's motion to dismiss for lack of subject matter jurisdiction without allowing the plaintiffs to engage in discovery, where the plaintiffs failed "to demonstrate that additional discovery was needed in order to decide the jurisdictional issue"); *see also KNC Investments, LLC v. Lane's End Stallions, Inc.*, 579 F. App'x 381, 385 (6th Cir. 2014) (unpublished) (quoting *In Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) ("A ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown.")).  To the extent the information is relevant, Plaintiff already possesses sufficient documentation, as evident from his response to the motion.  Thus the Court finds it unnecessary to further delay adjudication of KHESLC's motion.

---

[2] As set forth below, the Court concludes that KHESLC's motion to dismiss can be decided only on sovereign immunity grounds.  The Court finds it unnecessary to decide whether Kentucky's or Michigan's governmental immunity law applies and whether KHESLC is entitled to immunity under the applicable state's law.

5

"[S]tate governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Constitution." *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997) (emphasis removed) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977); *Moor v. Alameda*, 411 U.S. 693 (1973)). There are three exceptions to a State's sovereign immunity under the Eleventh Amendment, only one of which is potentially applicable here: A State may waive the immunity. *See S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citation omitted). Moreover, sovereign immunity "does not extend to counties and similar municipal corporations." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citing *Mt. Healthy*, 429 U.S. at 280).

The Supreme Court has set forth several factors for courts to consider when deciding whether an entity is an "arm of the State" or a "political subdivision." *Ernst*, 427 F.3d at 359 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44-45, 51 (1994)). Those factors are:

> (1) the State's *potential* liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Id*. (emphasis added, internal citations omitted); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) (explaining that the question is whether the

6

state treasury is potentially liable, not whether the state treasury will pay for the judgment in the particular case). In *Ernst*, the Sixth Circuit interpreted Supreme Court precedent as suggesting that the first factor is "the foremost factor." *Ernst*, 427 F.3d at 359 (citing *Hess*, 513 U.S. at 51).[3]

As an initial matter, Plaintiff argues that the Kentucky General Assembly's creation of KHESLC as "an independent de jure municipal corporation and political subdivision of the Commonwealth of Kentucky . . .", Ky. Rev. Stat. Ann. §§ 164A.020(3), .030 (West 2014), is determinative of whether KHESLC is a municipal corporation as opposed to an arm of the State. The language by which the state's statutes refer to an entity is only one part of one factor considered by the courts when making the arm-of-the-state determination, however. *See Ernst, supra*. Plaintiff also argues that Kentucky waived KHESLC's immunity by legislating that it may "[s]ue and *be sued*." Key. Rev. Stat. Ann. § 164A.060(11) (emphasis added). But as the Supreme Court explained in *Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651 (2011), such language is not sufficiently clear to evince

---

[3] At least one Circuit Court has noted that cases decided by the Supreme Court since *Hess* suggest "that the first factor does not deserve such preeminence." *Oberg v. Ky. Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 n.3 (4th Cir. 2012) (citing *Fed. Maritime Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 765 (2002)); *see also Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015) (quoting *Fed. Maritime Comm'n*, 535 U.S. at 760) ("[Sovereign] immunity not only protects state treasuries but also 'accords States the dignity that is consistent with their status as sovereign entities.' ").

7

the Kentucky General Assembly's intent to waive KHESLC's immunity from suit

in federal court:

> "[O]ur test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 144 L.Ed.2d 605 (1999) (internal quotation marks omitted). A State's consent to suit must be "unequivocally expressed" in the text of the relevant statute. *Pennhurst State School and Hospital*, [465 U.S. 89], 99, 104 S. Ct. 900 [1984]; *see Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, n. 1, 239-240, 105 S. Ct. 3142, 87 L.Ed.2d 171 (1985).  Only by requiring this "clear declaration" by the State can we be "certain that the State in fact consents to suit." *College Savings Bank*, 527 U.S., at 680, 119 S. Ct. 2219. Waiver may not be implied. *Id*., at 682, 119 S. Ct. 2219.
>
> For these reasons, a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L.Ed.2d 486 (1996). So, for example, a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court. *College Savings Bank*, supra, at 676, 119 S. Ct. 2219.  . . .

*Id*., 563 U.S. --, 131 S. Ct. at 1658 (footnote omitted).  Thus the Court will proceed

to evaluate all four arm-of-the-state factors.[4]

---

[4] Plaintiff additionally argues that KHESLC is not entitled to immunity as a result of having engaged in "ultra vires" activity-- i.e., servicing and collecting on the loans of non-Kentucky residents.  Nothing in the legislative materials reflects such a limitation on KHESLC's activities, however.  In fact, the Kentucky General Assembly specifically granted KHESLC the authority "to perform essential governmental and public functions and purposes in improving and otherwise promoting the educational opportunities of the citizens and inhabitants of the Commonwealth of Kentucky *and* other qualified students by a program of (Cont'd . . .)

8

As to the first factor– Kentucky's potential liability for a judgment against KHESLC– the enabling statute specifically exempts the State's liability for student loan and bond obligations, *only*.  Ky. Rev. Stat. Ann. § 164A.070.  The fact that the statute disavows Kentucky's liability for student loan and bond obligations and says nothing about liability for *other* obligations is significant.  *See United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 138, 141, 142-43 (4th Cir. 2014) (distinguishing Pennsylvania's statute, which disavows liability for "*all* of the debts" of the State's education loan entity, with Vermont's and Arkansas' statutes, which disavow liability only with respect to their state entity's debt obligations, when analyzing whether the state is potentially liable for a judgment against the entity).  Plaintiff fails to identify Kentucky law indicating that a judgment against KHESLC could not be enforced against the State.  On the other hand, KHESLC's enabling statute authorizes it to request, accept, and expend funds appropriated by Kentucky's General Assembly.  *See* Ky. Rev. Stat. Ann. § 164A.190.  Moreover, it is unclear whether KHESLC's revenues could be used to satisfy a judgment in this case.  The Kentucky General Assembly has provided that all monies received by KHESLC "shall be deemed to be trust funds to be held and applied solely as provided in [Chapter 164A]."  *Id.* § 164A.110.  The payment

---

financing, making, and purchasing of insured student loans."  Ky. Rev. Stat. Ann. § 164A.050(2) (emphasis added).

of a judgment against KHESLC is not included among the uses of the entity's revenues in Chapter 164A, or the investments available by incorporation in section 386.020. *See* Ky. Rev. Stat. Ann. §§ 164A.010-.250, 386.020.

The above discussion leads this Court to conclude that Kentucky is potentially liable for any judgment against KHESLC. Thus, the first arm-of-the-state factor weighs in favor of finding that KHESLC is an arm of Kentucky.

The second arm-of-the-state factor focuses on the language Kentucky's statutes and its state courts use to refer to KHESLC and the State's control and veto power over KHESLC's actions. As discussed earlier, Plaintiff focuses on the enabling statute's referral to KHESLC as an "independent de jure municipal corporation and political subdivision . . .." Ky. Rev. Stat. Ann §§ 164A.020(3), .030. Under Kentucky law, however, "political subdivisions" are "cloaked" with sovereign immunity. *Webb v. Jessamine Cnty. Fiscal Court*, 802 F. Supp. 2d 870, 887 (E.D. Ky. 2011) (citing *Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) (citing *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128 (Ky. 2004); *Commonwealth v. Whitworth*, 74 S.W.3d 695, 699 (Ky. 2002)). The Kentucky Supreme Court did hold in *Kentucky Center for the Arts Corporation v. Berns*, 801 S.W.2d 327 (1990), that "municipal corporations" do not qualify for sovereign immunity. *Id.* at 331-32. But the Court did not rely on the statutory designation to decide whether the entity before it was a state agency or a municipal

10

corporation. Instead, the Court looked at different characteristics of the entity to reach its decision. *See id*. at 330-32. The Kentucky Supreme Court subsequently refined the factors relevant to the analysis in *Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 91 (Ky. 2009).

In *Comair*, the Kentucky Supreme Court had to decide whether the Lexingon-Fayette Urban Airport Corporation ("airport corporation") and the Lexington-Fayette Urban County Airport Board ("airport board") were arms of the State, entitled to sovereign immunity. *Id*. at 92-93. The *Comair* Court identified two factors for deciding "what makes one corporate entity municipal and thus not immune, and another a state agency that is immune[.]" *Id*. at 97, 99. The first factor focuses on "the origins of the entity . . . which can be as simple as looking at the 'parent' of the entity in question, was it created by the state or a county, or a city?" *Id*. at 99. The second factor focuses on "whether the entity exercises a governmental function" which "means a 'function integral to state government.' " *Id*. The *Comair* Court elaborated:

> The focus . . . is on state level governmental concerns that are common to all of the citizens of this state . . . Such concerns include, but are not limited to, police, public education, corrections, tax collection, and public highways.

*Id*.

With respect to the first factor, the Court concluded that the airport board was a creature of the county. *Id*. at 100. While the origin of the board was not

11

evident to the Court, it looked to who appoints the board's member, the fact that

the county government retains significant control over the airport board, and that

the board is required to submit a detailed annual report to the legislative body. *Id*.

As to the second factor, the *Comair* Court concluded that the airport board "carries

out a function integral to state government in that it exists solely to provide and

maintain part of the Commonwealth's air transportation infrastructure (i.e., the

airport)." *Id*. at 101. In reaching this conclusion, the Court expressly rejected the

plaintiff's argument that the airport board was engaged in a proprietary function

and thus should not be entitled to immunity. *Id*. at 101. As the Court explained:

> Comair argues that the Airport Board is "engaged in a proprietary venture, i.e., transportation." This, however, imputes too much function and activity to the Board, which does not actually provide transportation services, for example, by operating an airplane to transport people. Instead, it provides the runways, terminals, and other infrastructure that private airline companies like Comair use (admittedly for a fee) to provide those transportation services. Comair's reasoning is akin to saying that the Transportation Cabinet is engaged in the business of transportation because it facilitates private and commercial transportation (e.g., by trucking companies) by building roads and highways (and even charges a fee for their use at times with toll booths). But the Cabinet (like the Board) is actually in the "business" of providing transportation infrastructure, which is a quintessential state concern and function, one that is very different from the business of transportation itself.
>
> The fact that the Board has substantial revenue from fees charged while operating the airport also does not make the activity proprietary. Partly this is because fees, authorized by KRS 183.33, are but one of many ways an airport board can generate revenue. An airport board can also receive money from its local government, including counties and urban-county governments, which may impose

12

> taxes and appropriate money from their general funds to support the
> creation, expansion, and operation of airports. See KRS 183.134.
> Most importantly, however, an airport board can issue revenue bonds,
> KRS 183.136, which, as noted above, is a legislative function.

*Id*. at 101-02.

In *Comair*, the Kentucky Supreme Court also concluded that the airport corporation is an arm of the State. *Id*. at 102-03. The Court reached this conclusion despite the fact that this defendant "is a true corporation that was created by filing Articles of Incorporation with the Secretary of State." *Id*. The Court relied on the fact that the airport corporation "has the same governmental function and parent as the [airport b]oard." *Id*. at 103.

Based on *Comair*, this Court finds that the Kentucky courts would conclude that KHESLC is an arm of the State, despite its statutory classification as "an independent de jure municipal corporation and political subdivision." First, it is important to note that the Kentucky General Assembly did not simply identify KHESLC as a "political subdivision", but expressly provided that it is "a political subdivision *of the Commonwealth of Kentucky*." Ky. Rev. Stat. Ann. §§ 164A.020(3), .030 (emphasis added). As to its origin, KHESLC was created by the State. Lastly, the Governor appoints its board members and it must submit annual reports to the Governor, the General Assembly, and the secretary of the Finance and Administration Cabinet. *Id*. §§ 164A.050, .170.

13

With respect to the second *Comair* factor, KHESLC's enabling statute expressly states that it was created to further "a public purpose of statewide import of the Commonwealth" – that being, "providing higher education assistance to needy, qualified students" which "is in the best interest of the Commonwealth[.]" *Id*. § 164A.010(1), (2).  Plaintiff argues, like the plaintiff did in *Comair*, that KHESLC is not entitled to sovereign immunity because it is engaged in a proprietary function.  For the reasons the Kentucky Supreme Court rejected the plaintiff's argument there, this Court does not find that KHESLC's function is proprietary.

KHESLC is not in the business of education; rather, it is in the "business" of making higher education available for Kentucky residents, which the State has declared to be a state concern and function.  *See supra*.  Like the airport board in *Comair*, KHESLC also uses the revenues it generates to operate and thus to further that state concern and function.  To the extent KHESLC's revenues may be otherwise used, such use is limited by the state legislature.  Ky. Rev. Stat. Ann. § 164A.110.  Finally, like the airport board, Kentucky's legislature has granted KHESLC the power to issue bonds.  Ky. Rev. Stat. Ann. § 164A.080.

For these reasons, the Court finds that the language by which Kentucky's statutes refer to KHESLC and how the Kentucky courts analyze such language weigh in favor of concluding that KHESLC is an arm of Kentucky.  However, the

14

second arm-of-the-state factor also requires the Court to consider the degree to which Kentucky controls and retains veto power over KHESLC. The Court already has identified some facts suggesting that the State controls KHESLC, but will elaborate on the matter now.

As suggested earlier, the Governor of Kentucky retains significant control over KHESLC. KHESLC is governed by a fifteen-member board of directors, appointed by the governor. Ky. Rev. Stat. Ann. § 164A.050(3)(a), (4). "Such an arrangement frequently indicates state control." *United States ex. rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 139, 144 (4th Cir. 2014) (citing cases). The board consists of "[e]ight (8) voting members chosen from the general public residing in the Commonwealth of Kentucky" and "[s]even (7) voting members of the board of directors of the Kentucky Higher Education Assistance Authority appointed by the Governor . . .." *Id*. § 164A.050(3)(a)(1), (2). Several commonwealth officials, including the President of the Council on Postsecondary Education, the Secretary of the Finance and Administration Cabinet, the President of the Association of Independent Kentucky Colleges and Universities, and the State Treasurer, "serve as ex officio voting members. *Id*. § 164A.050(3)(c). Kentucky's governor maintains the power to remove any of the eight directors chosen from the general public for cause. *Id*. § 164A.050(6). The

15

governor also has the authority to appoint a replacement director in the event of a vacancy.[5]  *Id*. § 164A.050(5).

KHESLC must obtain approval from the Kentucky General Assembly prior to issuing bonds under certain circumstances.  *Id*. § 164A.080.  As an agency authorized to issue bonds, it is accountable to the State for "all money received and disbursed during each fiscal year."  *See* Ky. Rev. Stat. Ann. §§ 42.545, 45A.840(3), 164A.080.  Thus, KHESLC must submit an annual report and audit of its expenditures and investments to the State Governor, General Assembly, and the Secretary of the Finance and Administration Cabinet.  *Id*. §§ 164A.170, 42.545, 45A.840(3).  Finally, upon KHESLC's termination or dissolution, all of its rights and properties vest in the State.  *Id*. § 164A.230.  While there is an exception to this provision if the board has directed the distribution of certain property elsewhere, the legislature has placed limitations on where the property may be distributed.  *Id*.

As Plaintiff points out, KHESLC is granted numerous powers in its enabling statute including the power to: make, purchase, sell, and modify loans; collect and

---

[5] The statute provides that "[u]pon resignation or expiration of the term of an appointed member of the board . . . the member's position shall be abolished to reduce the combined number of appointed members of the board[] . . . to ten (10) members."  Ky. Rev. Stat. Ann. § 164A.050(3)(b).  Once that ten-member minimum is met, however, the governor chooses the members to fill vacancies.  *Id*. § 164A.050(5).

service loans; procure insurance; borrow money; make and publish rules and regulations; and enter into contracts. *Id*. § 164A.055(5). However, these actions are necessary for KHESLC to carry out its function as defined in the enabling statute and the legislature has expressly constrained KHESLC's powers in that regard. *Id*. For example, the enabling statute grants the board of directors the authority to "[p]romulgate administrative regulations and adopt procedures *to implement this section[,]*" to "[m]ake and enter into contracts *necessary for the administration of the corporation[,]*" and to "[m]ake, execute, and effectuate any and all agreements or other documents . . . and perform other acts *necessary or appropriate for the effectuation of its rights and duties pursuant to this section*[.]" *Id*. § 164A.055(5)(b), (c), (e) (emphasis added). As a result of these restrictions on KHESLC's powers, the Court does not agree with Plaintiff that KHESLC "appears to have more power and control than many private commercial corporations." (ECF No. 36 at Pg ID 387.)

For the above reasons, the Court concludes that the second arm-of-the-state factor also weighs in favor of finding that KHESLC is an arm of Kentucky. The third factor considers "whether state or local officials appoint the board members of the entity." *Ernst, supra*. As the above analysis indicates, the Governor of Kentucky has that authority with respect to KHESLC. Thus this factor also weighs in favor of finding that KHESLC is an arm of the State.

17

As suggested by the Court's earlier discussion, the final factor– whether KHESLC's functions fall within the traditional purview of state or local government– also weighs in favor of finding that it is an arm of Kentucky.  The Kentucky General Assembly expressly created KHESLC to effectuate "a public purpose of *statewide import of the Commonwealth*."  Ky. Rev. Stat. Ann. § 164A.010(1) (emphasis added).  The legislature stated that "the corporation will be performing vital public purposes in improving and promoting the public welfare and prosperity *of the people of the Commonwealth of Kentucky* by promoting the availability of higher educational opportunities."  *Id*. § 164A.030 (emphasis added).  Plaintiff argues that KHESLC's functions fall outside of traditional government functions because its activities generate a substantial profit.

KHESLC's profits, however, are generated "by a program of financing, making, and purchasing of insured student loans"– i.e., the activities it was granted the power to perform in order to "promot[e] the educational opportunities of the citizens and inhabitants of the Commonwealth of Kentucky and other qualified students."  Ky. Rev. Stat. Ann. § 164A.050(2).  As the Fourth Circuit reasoned when rejecting the same argument asserted by the plaintiff in *Oberg* with respect to the Pennsylvania Higher Education Assistance Agency ("PHEAA"), an entity similar to KHESLC:

> Pennsylvania created PHEAA to finance, make, and guarantee loans for higher education, and "higher education is an area of

18

> quintessential state concern and a traditional state government
> function." Md. Stadium Auth., 407 F.3d at 265. PHEAA does not
> provide higher education directly, but it nonetheless facilitates the
> attainment of education by supplying student financial aid services.
> This work is clearly of legitimate state concern.

*United States ex rel. Oberg*, 745 F.3d at 140 (brackets omitted).  Like the plaintiff in *Oberg*, Plaintiff also argues that KHESLC's operations are so focused out of state that the agency's functions cannot be said to be focused on state concerns.

Relying on documents published by KHESLC, Plaintiff estimates that KHESLC derives more than half of its revenues from its servicing and collection activities for non-Kentucky citizens' loans.  (ECF No. 36 at Pg ID 372-73.)  The evidence Plaintiff offers, however, also shows that KHESLC maintained a substantial $1.3 billion portfolio of student loans to Kentucky residents in 2013. (*Id*. at Pg ID 372.)  Thus KHESLC still appears focused on the statewide concern of facilitating higher educational opportunities for Commonwealth residents . . . even if that is not the entity's only focus.  Moreover, it is not evident that a comparison of KHESLC's revenues from providing loans to Kentucky citizens with its revenues from servicing and collection activities for out-of-state loans accurately reflects the degree to which it is focused on each of those activities, as one activity may be more profitable than another.  Further, any substantial increase in the revenue KHESLC derives from servicing and collection activities with respect to loans held by non-Kentucky citizens in turn provides it with a greater

opportunity to carry out the State's concern of helping to make higher education affordable and available to Kentucky residents.[6]

Thus even assuming that Plaintiff is correct and could obtain further support to show that KHESLC earns more revenue from servicing loans to non-Kentucky citizens than from its lending activities to Kentucky citizens, this does not undermine KHESLC's primary function of helping finance higher education for Kentucky residents. As such, this last factor also weighs in favor of concluding that KHESLC is an arm of Kentucky.

Having found that each of the four factors set forth in *Ernst* counsels in favor of holding that KHESLC is an arm of the state, the Court concludes that it is entitled to sovereign immunity. The Court therefore finds it unnecessary to decide whether KHESLC is entitled to governmental immunity under Kentucky or Michigan law. Because Plaintiff is precluded from suing KHESLC in federal court and his claim against KHESLC must be dismissed, KHESLC's motion to stay discovery is denied as moot.

---

[6] Pointing out the "rigorous" "efforts [KHESLC] went to in pursuing the award of the contract to service federal student loans[,]" Plaintiff argues that "KHESLC essentially overhauled its entire organization and manner of doing business in pursuit of a contract to service loans to non-Kentucky citizens." (ECF No. 36 at Pg ID 373.) Putting aside the question of whether it is an overstatement to assert that KHESLC "overhauled its entire organization and manner of doing business" in this pursuit, the Court must ask whether KHESLC's activities related to non-Kentucky citizens better enables it to make higher education affordable for Kentucky citizens.

20

Accordingly,

**IT IS ORDERED**, that KHESLC's motion to dismiss is **GRANTED** and

KHESLC is **DISMISSED AS A PARTY** to this lawsuit;

**IT IS FURTHER ORDERED**, that KHESLC's motion for stay of

discovery is **DENIED AS MOOT**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 4, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 4, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

21